UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BENNY BERNARD BELL,

            Plaintiff,                 CIVIL ACTION NO. 11-12570

         v.                       DISTRICT JUDGE ARTHUR J. TARNOW

COMMISSIONER OF              MAGISTRATE JUDGE MARK A. RANDON
SOCIAL SECURITY,

            Defendant.
_____/

**REPORT AND RECOMMENDATION**
**ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

I.     **PROCEDURAL HISTORY**

     ***A.     Proceedings in this Court***

     On June 13, 2011, Plaintiff filed suit seeking judicial review of the Commissioner's

decision to deny benefits.  (Dkt. No. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule

72.1(b)(3), the case was referred to this Magistrate Judge to review the Commissioner's decision.

(Dkt. No. 3).  This matter is before the Court on cross-motions for summary judgment.  (Dkt.

Nos. 8, 11).

     ***B.     Administrative Proceedings***

     Plaintiff applied for disability and disability insurance benefits on August 30, 2006,

alleging that he became disabled on March 6, 2001.  The application was initially denied by the

Commissioner on November 28, 2006.  (Tr. 14).  On June 17, 2009, Plaintiff appeared with

counsel for a video hearing before Administrative Law Judge ("ALJ") Ayrie Moore, who

considered the case *de novo*.  At the hearing, Plaintiff amended his alleged onset disability date to

June 22, 2004, the day after a prior ALJ's decision.[1]  (Tr. 14).  On September 15, 2009, the ALJ found that Plaintiff was not disabled.  (Tr. 11-25).  Plaintiff requested a review of this decision. (Tr. 9-10).  On April 8, 2011, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for further review.  (Tr. 2-4).

In light of the entire record in this case, this Magistrate Judge finds that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled.  Accordingly, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, Defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.  STATEMENT OF FACTS

### A.  *ALJ Findings*

Plaintiff was 48-years-old, which is defined as a younger individual age 45-49, on the date last insured.  (Tr. 24).  Plaintiff has past relevant work as an automobile assembly line worker.  (Tr. 23).  The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since June 22, 2004, Plaintiff's alleged disability onset date.  (Tr. 16).

At step two, the ALJ found that Plaintiff had the following "severe" impairments: carpal tunnel syndrome status post carpal tunnel release, ulnar neuropathy, status post right radial and rib fractures, and asthma.  (Tr. 16).

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listings in the regulations.  (Tr. 17).

---

[1] Plaintiff filed a previous application for disability and disability insurance benefits in 2001 that was denied by an ALJ on June 21, 2004.  (Tr. 64-74).

Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") to perform "sedentary work . . . except he can do no crawling, squatting, kneeling, climbing, or overhead lifting; no use of air or vibrating tools; with frequent but not constant use of his hands for handling and fingering; and simple and repetitive job tasks." (Tr. 17).

At step four, the ALJ found that Plaintiff could not perform his previous work as an automobile assembly line worker.  (Tr. 23).

At step five, the ALJ denied Plaintiff benefits, because the ALJ found that Plaintiff could perform a significant number of jobs available in the national economy, such as receptionist (400 jobs in Michigan); order clerk (300 jobs in Michigan); general office clerk (1,800 jobs in Michigan) and surveillance system monitor (300 jobs in Michigan).  (Tr. 24).

### B.    Administrative Record

#### 1.    Plaintiff's Testimony & Statements

Plaintiff testified at the administrative hearing that he has pain in his hands, elbows, and legs.  He also has stiffness, tingling, and swelling in his knee.  His left ankle and right knee swell when he walks long distances.  (Tr. 33, 35, 43).  An asthma attack is triggered when Plaintiff exerts himself or smells certain odors.  According to Plaintiff, he has asthma attacks 2-3 times per week.  (Tr. 39).  Plaintiff testified that the pain reduces his ability to concentrate.  (Tr. 48).

Plaintiff takes medication to relieve the pain and control his asthma.  (Tr. 41).  Plaintiff also elevates his legs when he sits down, does not walk frequently, and takes naps during the day to help take his mind off the pain.  (Tr. 43).  However, Plaintiff testified that his asthma medication causes dry mouth, severe coughs, headaches, chills, shakes, and trembling.  (Tr. 42). The medication also causes drowsiness and dizziness.  (Tr. 50).

2.      **Medical Evidence**

The Court briefly summarizes the relevant medical evidence from June 22, 2004 (Plaintiff's alleged onset disability date) through December 31, 2006 (Plaintiff's date last insured).

On October 29, 2004, Plaintiff went to the Genesys Regional Medical Center - Emergency Department complaining of a cough and difficulty breathing. (Tr. 276). Dr. T.J. Vasanthkumar diagnosed Plaintiff with asthma and bronchitis. Plaintiff was prescribed Zithromax, Advair, and Allegra. (Tr. 277).

On January 11, 2005, Plaintiff went to the Genesys Regional Medical Center - Emergency Department again complaining of a cough. Plaintiff told Dr. Khoa C. Luong that he was wheezing and had mild difficulty breathing. (Tr. 274). Plaintiff was discharged in good condition and told to continue using his nebulizer. Plaintiff did not want any further treatment. (Tr. 275).

On August 18, 2005, Dr. Paul Musson refilled Plaintiff's prescription for Allegra. (Tr. 262).

On November 18, 2005, Dr. Musson refilled Plaintiff's prescription for Flonase, Allegra, and Advair. (Tr. 261).

On February 20, 2006, Plaintiff had a follow-up visit with Dr. Musson regarding an asthma flare up. Dr. Musson diagnosed Plaintiff with asthma and provided him a prescription for Advair, Allegra, and Flonase. (Tr. 261).

Dr. Gordon R. Forrer examined Plaintiff on September 27, 2006. Plaintiff informed Dr. Forrer that the pain in his legs, arms, and hands prevents him from working. (Tr. 222-223). Dr. Forrer indicated that Plaintiff's complaints of aches and pains is suggestive of an arthritic

process.  According to Dr. Forrer, he would not "anticipate any adverse[sic] changes in [Plaintiff's] way of life or being within the foreseeable future or the next twelve months."  (Tr. 225).  Dr. Forrer did not provide any treatment, write any prescriptions, or offer Plaintiff any advice.  (Tr. 222).

Dr. Samiullah H. Sayyid examined Plaintiff on October 19, 2006.  Plaintiff complained of bronchial asthma; carpal tunnel syndrome; and pain in his elbow, arm, and hand.  (Tr. 228).  Dr. Sayyid indicated that Plaintiff had reduced movement in his finger joints and reduced grip in both hands due to carpal tunnel syndrome.  (Tr. 229).  Dr. Sayyid diagnosed Plaintiff with bronchial asthma and carpal tunnel syndrome in both hands.  (Tr. 230).

An RFC assessment was performed on November 9, 2006.  The disability examiner indicated that Plaintiff stated he could hardly breath due to asthma, he has pain in his hand and right knee, and his medication makes him drowsy.  (Tr. 240).  According to the disability examiner, Plaintiff had no trouble breathing, but he should avoid even moderate exposure to vibration due to Plaintiff's carpal tunnel syndrome.  (Tr. 239-240).

### 3.    Vocational Expert

During the hearing, the ALJ asked a vocational expert ("VE") to assume a hypothetical individual who is Plaintiff's age, has Plaintiff's level of education, and past work experience who is restricted to sedentary work with no crawling, squatting, kneeling, or climbing; no repetitive pushing, pulling, gripping, grasping, or reaching; no use of air or vibrating tools; no repetitive sustained dexterity; only occasional contact with the public and coworkers; and simple and repetitive job tasks.  (Tr. 54-55).  The VE testified that jobs existed in the regional economy for an individual with those limitations.  (Tr. 56-57).

However, the VE testified that the hypothetical individual would be precluded from work if: (1) he needed to nap outside typical breaks and lunch periods; (2) he needed to elevate his legs outside typical breaks and lunch periods; or (3) the level of pain was so great that he was off task 20 percent of the time.  (Tr. 58).

      ***C.***       ***Plaintiff's Claims of Error***

Plaintiff argues that the ALJ's decision is not supported by substantial evidence in the record and is contrary to the Social Security Act.  Specifically, Plaintiff argues that the ALJ: (1) incorrectly assessed his credibility; (2) failed to adequately explain why his treating physician's opinion (Dr. Musson) was not given controlling weight; and (3) did not include all of his relevant impairments in the hypothetical to the VE.  (Dkt. 8; Pl.'s Br. at 5-15).

**III.**    **DISCUSSION**

      ***A.***       ***Standard of Review***

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *See Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *See Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the

Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility") (internal quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen*, 800 F.2d at 545 (*en banc*). Substantial evidence is "more than a scintilla of evidence but

less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the [Commissioner] may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted).

The scope of this Court's review is limited to an examination of the record only. *See Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *See Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

### B.      Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq.*).

Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 CFR § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008) (citing 20 CFR §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534).  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by his impairments and the fact that he is precluded from performing his past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at 241; 20 CFR §§ 416.920(a)(4)(v) and (g).

### C.    Analysis and Conclusions

### 1.    The ALJ Did Not Err in Assessing Plaintiff's Credibility

In reaching her conclusion at step five of the disability analysis that Plaintiff had the RFC to perform sedentary work "except he can do no crawling, squatting, kneeling, climbing, or overhead lifting; no use of air or vibrating tools; with frequent but not constant use of his hands for handling and fingering; and simple and repetitive job tasks," the ALJ stated the following:

> In sum, the record as a whole, including the overall evidence of record; the medical evidence; [Plaintiff's] testimony; [Plaintiff's] activities; and other factors . . . support some functional limitations, *but it does not fully support the credibility of [Plaintiff] regarding the severity or frequency of his symptoms as more supportive of any greater limitations or restrictions than those I have included in the residual functional capacity set forth in this decision.  Based upon all these factors, I have determined that the record as a whole does not fully support [Plaintiff's] subjective allegations about the disabling nature of his impairments to the extent they are inconsistent with the above-described residual functional capacity.*  Consequently, there is no basis for finding that [Plaintiff] had suffered debilitating pain or any other symptoms that would further reduce the

residual functional capacity described above at any time through the date of this decision.

(Tr. 23) (emphasis added).  Plaintiff argues that his testimony regarding his uncontrollable asthma along with the pain he has in his hands, elbows, and knees, is credible evidence that he could not work from 2004 through 2006.  According to Plaintiff, the ALJ erred by not finding this testimony credible.

If the ALJ rejects the testimony of the Plaintiff as not being credible, the ALJ must clearly state the reasons for that conclusion.  *Felisky*, 35 F.3d at 1036.  In commenting on Plaintiff's credibility, the ALJ must follow the requirements of, among other provisions, 20 CFR § 404.1529 as well as SSR 96-7p.

SSR 96-7p provides that:

> the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements. The finding on credibility of an individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility.  The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision.  It is not sufficient to make a conclusory statement that "the individuals allegations have been considered" or that "the allegations are (or are not) credible."  It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms.  The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.  This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision.

The factors described in the regulations for evaluating symptoms include:

(i)    Your daily activities;

(ii)     The location, duration, frequency and intensity of your pain or other symptoms;

(iii)    Precipitating and aggravating factors;

(iv)    The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

(v)     Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi)    Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15-20 minutes every hour, sleeping on a board, etc.); and

(vii)   Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 CFR § 404.1529(c)(3).

Furthermore, an ALJ's failure to include detailed reasons in a credibility determination may constitute harmless error if the record demonstrates that the claimant had a sufficient opportunity to voice his subjective complaints and if the record shows that the ALJ took those complaints into account. *See, e.g., Spicer v. Apfel*, 15 Fed.Appx. 227, 234 (6th Cir. 2001) (the court found that such a harmless error existed when the ALJ took into account the claimant's subjective accounts of his pain on the one hand, and the objective medical evidence on the other, and concluded that the claimant was exaggerating his complaints of pain).

The record clearly demonstrates that the ALJ stated specific reasons, supported by evidence in the record, for the weight given to Plaintiff's testimony.  In her decision, the ALJ supported her conclusion that Plaintiff's testimony was not fully credible using the medical evidence.  (Tr. 18-21).  With regard to Plaintiff's testimony regarding the pain in his hands, elbows, and knees, the ALJ stated:

[Plaintiff] alleged that he is unable to work because of wrist and elbow pain; however, the medical records do not fully corroborate [Plaintiff's] allegations.

-12-

Several years prior to his amended onset date, [Plaintiff] underwent a right carpal tunnel release in September 2001 (Exhibits B1F & B3F) and a left carpal tunnel release in January 2002. He experienced significant improvement of the carpal tunnel syndrome, evidenced by EMG testing in December 2003, which revealed only very mild and residual carpal tunnel syndrome, with no evidence of ulnar neuropathy of the wrists and across the elbows and no superimposed cervical radiculopathy or other abnormalities (Exhibit B3F). Several months before his amended onset date, on February 3, 2004, [Plaintiff] returned for the last time to his surgeon Thomas Beird, M.D., with complaints of pain after activities such as reading a newspaper, talking on the phone, and driving (Exhibit B3F). Dr. Beird noted that [] despite exhibiting markedly diminished pinch and grip strength on the right side and a moderately positive Tinel's sign, [Plaintiff's] hands were not swollen. When [Plaintiff] requested pain medication prescriptions, Dr. Beird refused for undocumented reasons and opined that [Plaintiff] reached maximum medical improvement.

From June 22, 2004, his amended onset date, through December 31, 2006, there were no records of any on-going treatment for carpal tunnel syndrome or for any complaints of upper extremity pain. On October 19, 2006, [Plaintiff] underwent a consultative physical examination performed by Samiullah Sayyid, M.D. (Exhibit B5F). Dr. Sayyid reported that fine and gross dexterity in both arms was normal, with only slightly reduced grip at 4/5 and that all joints in both arms and legs were normal except for some reduced movements of the finger joints due to carpal tunnel syndrome (Exhibit B5F).

.     .     .

[Plaintiff] testified that he also had knee pain and that he had previously undergone a right knee arthroscopy in 2005, which was performed by his orthopedic surgeon, Dr. Dyeball. Additionally, at the hearing . . ., I granted a request made by [Plaintiff's] representative to hold the record open in order for him to submit additional evidence, including Dr. Dyeball's treatment notes. Following the hearing, emergency department treatment records were submitted which did not document significant treatment for any impairments, including any problem with his right knee (Exhibit B9F).

(Tr. 18-20). With regard to Plaintiff's testimony regarding his uncontrollable asthma, the ALJ

stated:

[Plaintiff] also alleged that he is unable to work because of uncontrolled asthma. In November 2003, one-half year before his amended onset date, [Plaintiff] underwent pulmonary function studies, which revealed a moderate degree of airway obstruction and bronchodilator response consistent with bronchial asthma (Exhibit B8F). During the relevant period before me, however, the claimant received only sporadic treatment for his respiratory symptoms. On October 29,

-13-

2004, [Plaintiff] reported to the Genesee[sic] Regional Medical Center emergency department with complaints of cough lasting for several days. Except for mild wheezing, clinical examination findings were normal, including no signs of respiratory distress or accessory muscle use, retractions, or splinting. The attending physician diagnosed asthma and bronchitis, and after an Alburterol nebulizer treatment was administered, [Plaintiff] was discharged in fair condition (Exhibit B9F). Three months later, on January 11, 2005, [Plaintiff] presented to the emergency department with complaints of a cough lasting three days when he had exhausted his supply of medications (Exhibit B9F). On physical examination, [Plaintiff] had only some signs of mild wheezing with no other abnormalities. The attending physician diagnosed acute asthma exacerbation, treated [Plaintiff] with Albuterol, and discharged [Plaintiff] in stable condition (Exhibit B9F). [Plaintiff] presented to the emergency department again in March and May 2005, for complaints of eye pain and skin rash, and did not report any complaints related to his alleged impairments. Furthermore, the attending physicians did not report any clinical examination findings related to [Plaintiff's] allegedly disabling impairments (Exhibit B9F).

On May 12, 2005, [Plaintiff] was seen by his primary care physician, Paul Musson, M.D., for complaints after an insect bit. Dr. Musson noted that [Plaintiff] was last seen in November 2003 and counseled him regarding maintaining regular office visits for his asthma, even though [Plaintiff] had been obtaining Advair and other respiratory medications through the emergency department (Exhibit B8F). Dr. Musson advised him to return in two weeks. [Plaintiff], however, did not follow Dr. Musson's advice to return two weeks later. Rather, six months later on November 18, 2005, he returned to Dr. Musson for respiratory related prescription refills (Exhibit B8F). Within that six month gap in treatment, [Plaintiff's] only apparent contact with Dr. Musson's office was a request for a prescription refill for Allegra and Flonase on August 18, 2005. No treatment was provided on this date. Thereafter, on February 20, 2006, [Plaintiff] returned to Dr. Musson for a follow up visit for an asthma flare up. Except for bilateral wheezing, Dr. Musson reported normal clinical examination findings and diagnosed asthma and obesity (Exhibit B8F). The record indicates that as of February 2006, [Plaintiff] did not return to Dr. Musson's office or request prescription refills from him. The record does not support any limitations based on [Plaintiff's] asthma.

[Plaintiff] underwent a consultative physical examination on October 19, 2006, performed by Dr. Sayyid, M.D. to whom he complained of asthma, depression, and carpal tunnel syndrome resulting in pain in his shoulders, elbow, and hands (Exhibit B5F). Dr. Sayyid reported normal to mild clinical findings, such as normal breath sounds, the absence of reflex or sensory deficits, normal dexterity in the arms, normal cervical spine range of motion, slight tenderness of the lumbosacral spine with slightly diminished movements, reduced movements in the finger joints, normal fine and gross dexterity in the upper extremities, and reduced grip strength in both hands at 4/5. Dr. Sayyid assessed [Plaintiff] to be

obese at 74 inches tall and weighing 288 pounds.  He diagnosed bronchial asthma,
chronic depression, evidently based on [Plaintiff's] reported history, and carpal
tunnel syndrome of both hands status post surgery (Exhibit B5F).

(Tr. 19-20).

In addition to the objective medical evidence, the ALJ analyzed the majority of the factors

delineated in the regulations:

In addition to the objective evidence, . . . a number of other factors weigh into
[Plaintiff's] credibility (20 CFR 416.929(c); SSR 96-7p).  The record reveals
relatively infrequent trips to the doctor for the allegedly disabling symptoms
during the relevant period before me, indicating that his impairments are not as
severe as alleged.  When [Plaintiff] received treatment, that treatment was
essentially routine and/or conservative in nature.  The record shows that
[Plaintiff's] complaints of pain and other symptoms were treated with
medications.  Although [Plaintiff] has carpal tunnel syndrome, after his bilateral
carpal tunnel releases, no further revision or follow-up surgery has [] been
recommended.  Although [Plaintiff] has received various forms of treatment for
his allegedly disabling symptoms, which would normally weigh somewhat in
[Plaintiff's] favor, the record also reveals that the treatment has been generally
successful in controlling those symptoms.  Specifically, the record shows that the
use of asthmatic medications has been effective in alleviating [Plaintiff's]
respiratory symptoms (Exhibit 3F).  Taking all these factors into consideration, I
have accommodated [Plaintiff's] residual hand and knee pain by restricting him to
sedentary work that does not involve crawling, squatting, kneeling, climbing, or
overhead lifting; use of air or vibrating tools; and only frequent, but not constant,
use of his hands for repetitive activities.

Although [Plaintiff] has alleged side effects from the use of medications, for
example, drowsiness, dizziness, and shakiness, the medical records do not
corroborate those allegations.  I have given [Plaintiff] the benefit of the doubt with
regards to his allegation that he experiences drowsiness as a side effect of his
medications given his description of his daily activities . . ., and, taken together
with his alleged pain, I have precluded him from jobs requiring him to sustain
concentration, persistence and pace on complex job tasks but have, instead,
restricted him to only simple and repetitive job tasks.

In addition, I have considered [Plaintiff's] activities in evaluating his allegations.
[Plaintiff] testified that he lives with his sister, but he does not assist her with any
household tasks, such as washing dishes and laundry, or with grocery shopping.
At the most, [Plaintiff] testified that he walks to the mailbox, watches television,
or sleeps throughout the day.  Although [Plaintiff] has described daily activities
which are fairly limited, two factors weigh against considering these allegations to
be strong evidence in favor of finding [Plaintiff] disabled.  First, allegedly limited

-15-

daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if [Plaintiff's] daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to [Plaintiff's] medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. Overall, [Plaintiff's] reported limited daily activities are considered to be outweighed by the other factors discussed in this decision. I have, however, accounted for [Plaintiff's] limitations in the residual functional capacity by restricting [Plaintiff] to less than sedentary work[.]

(Tr. 21-22).

The Court finds the ALJ thoroughly explained her reasoning for not finding Plaintiff's

statement entirely credible, and there is no reason to disturb the ALJ's credibility finding.

### 2.    The ALJ Did Not Err By Failing to Explain Why She Did Not Give Plaintiff's Treating Physician's Opinion (Dr. Musson) Controlling Weight

Plaintiff next argues that the ALJ erred by failing to explain why she did not give his

treating physician's opinion (Dr. Musson) controlling weight. According to Plaintiff, Dr.

Musson reports throughout his medical records that he continually treated Plaintiff for pain and

uncontrollable asthma. Plaintiff directs the Court's attention to pages 261-294 of the

administrative record, but does not state Dr. Musson's opinion.

The Court reviewed the relevant medical records from Dr. Musson - which only consist

of two pages. (Tr. 261-262). Page 263 of the administrative record contains Dr. Musson's notes

from 2003, which is before Plaintiff's alleged onset date. Pages 264-294 of the administrative

record contain medical records from doctors other than Dr. Musson. The record shows no

evidence that Dr. Musson rendered an opinion regarding Plaintiff's ability to work. Accordingly,

the ALJ does not have a basis to explain why she did not give Dr. Musson's "opinion"

controlling weight.

On July 8, 2009, Dr. Thomas Beird, who performed Plaintiff's carpal tunnel surgery, rendered an opinion regarding Plaintiff's ability to work.  Dr. Beird indicated that Plaintiff "has been disabled sense[sic] 9-25-01."  (Tr. 295).

Under the treating source rule, "[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'"  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 CFR § 404.1527(d)(2)); *see also* SSR 96–2p.  Furthermore, even where the ALJ finds that a treating physician's opinion is not entitled to controlling weight, he or she must apply the following non-exhaustive list of factors to determine how much weight to give the opinion: (1) "the length of the treatment relationship and the frequency of examination," (2) "the nature and extent of the treatment relationship," (3) the relevant evidence presented by a treating physician to support his opinion, (4) "consistency of the opinion with the record as a whole," and (5) "the specialization of the treating source." *Id.*; 20 CFR § 404.1527.

The treating-source rule also "contains a clear procedural requirement."  *Wilson*, 378 F.3d at 544 (citing 20 CFR § 404.1527(d)).  In particular, "the [ALJ's] decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  SSR 96–2p, 1996 WL 374188 at *5; *Rogers*, 486 F.3d at 242.  Moreover, "a failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack

of substantial evidence, even where the conclusion of the ALJ may be justified based upon the

record." *Rogers*, 486 F.3d at 243.

The issue of whether Plaintiff is disabled within the meaning of the Social Security Act is

reserved to the Commissioner.  *See* 20 CFR § 404.1527(e); *see also Warner v. Comm'r of Soc.*

*Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); *Gaskin v. Comm'r of Soc. Sec.*, 280 F.Appx. 472, 474

(6th Cir. 2008).  The ALJ "is not bound by conclusory statements of doctors, particularly where

they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246

F.3d 762, 773 (6th Cir. 2001); *see also Kidd v. Comm'r of Soc. Sec.*, 283 F.Appx. 336, 340 (6th

Cir. 2008).  An opinion that is based on Plaintiff's reporting of his symptoms is not entitled to

controlling weight.  *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th

Cir. 1990); *see also Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876-77 (6th Cir. 2007).

The ALJ stated the following regarding Dr. Beird's opinion:

> After the hearing, on September 4, 2009, a one-page form was submitted which
> had been completed by Dr. Beird on July 8, 2009, several years after [Plaintiff's]
> insured status expired.  On this form, Dr. Beird diagnosed carpal tunnel syndrome
> and opined that [Plaintiff] could lift less than 10 pounds, could stand and walk 6
> hours, could sit six hours, and that he had severe limitations in the use of his arms
> for the operation of hand controls and mild limitations in the use of his legs for
> the operation of foot controls.  These limitations are consistent with sedentary
> work, as well as the standing requirements of light work.  Nevertheless, he went
> on to opine that [Plaintiff] had been disabled "since" [sic] September 25, 2001.
> Dr. Beird did not state when he last treated [Plaintiff], nor did he include any
> medical documentation whatsoever to support his opinion.  His assessed
> limitations, however, are essentially consistent with the sedentary work and other
> restrictions as found by me in the above residual functional capacity.  As for his
> opinion of disability, I reject it for a number of reasons.  First, a conclusion of
> disability is reserved to the Commissioner.  Second, Dr. Beird's opinion is dated
> several years after [Plaintiff's] date last insured, contains no information
> concerning when he last examined [Plaintiff], how often he has treated [Plaintiff],
> or any clinical or laboratory findings during the insured period or at any time.
> Third, as discussed above, I give it little weight because it is unsupported by any
> objective findings and inconsistent with the other evidence of record.  Fourth, it is
> inconsistent with Dr. Beird's actual limitations.

-18-

(Tr. 22-23).

As stated by the ALJ, Dr. Beird's conclusory opinion that Plaintiff was disabled since 2001 contradicts his opinion that Plaintiff can lift less than 10 pounds, stand and walk 6 hours, and sit six hours.  These functional limitations allow Plaintiff to perform at least sedentary work.[2]

In addition, Dr. Beird's opinion was given in 2009 - nearly *three years after* Plaintiff's date last insured.

Finally, Dr. Beird's one-page questionnaire did not identify how long he had a relationship with Plaintiff, how often he examined Plaintiff, and it was totally unsupported by clinical or laboratory findings.

This Magistrate Judge finds the ALJ complied with the procedural aspects of the treating-physician rule, and that her ultimate decision to give Dr. Beird's opinion little weight  was within the "zone of choice" accorded an ALJ on substantial evidence review.

### 3.      The ALJ's Hypothetical to the VE was Not Flawed

Finally, Plaintiff argues that the hypothetical to the VE was flawed because it did not consider the pain he has in his hands and elbows.

"The rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts."  *Redfield v. Comm'r of Soc. Sec.*, 366 F.Supp.2d 489, 497 (E.D. Mich. 2005).  The ALJ  is only required to incorporate the limitations that he finds credible.  *Casey v. Sec'y of HHS,* 987 F. 2d 1230, 1235 (6th Cir. 1993).  This obligation to assess credibility extends to the claimant's  subjective complaints such that the ALJ "can present a hypothetical to the VE

---

[2]"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 CFR § 404.1567(a).

on the basis of his own assessment if he reasonably deems the claimant's testimony to be

inaccurate." *Jones*, 336 F.3d at 476.

As stated above, the Court will not disturb the ALJ's credibility findings, and the ALJ

found Plaintiff's statements of significant limitations related to his hands, wrist or elbows were

not corroborated by the objective medical evidence. (Tr. 19). However, the ALJ did find some

limitations in Plaintiff's use of his hands: "he needs to avoid moderate exposure to vibrating

tools and he can use his hands only frequently, but not constantly, for repetitive handling and

fingering." (Tr. 19). The ALJ properly incorporated those limitations into the hypothetical to the

VE.

## IV.   RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's motion for summary

judgment be **DENIED**, Defendant's motion for summary judgment be **GRANTED**, and that the

findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as

provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific

objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140

(1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United

States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise

some issues, but fail to raise others with specificity, will not preserve all the objections a party

might have to this Report and Recommendation. *See Willis v. Sec'y of Health & Human Servs.*,

931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370,

1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

s/Mark A. Randon
Mark A. Randon
United States Magistrate Judge

Dated: June 11, 2012

## Certificate of Service

*I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, June 11, 2012, by electronic and/or ordinary mail.*

*s/Melody Miles*
*Case Manager*